1  BETSY C. MANIFOLD (182450)
   manifold@whafh.com
2  RACHELE R. RICKERT (190634)
   rickert@whafh.com
3  MARISA C. LIVESAY (223247)
   livesay@whafh.com
4  BRITTANY N. DEJONG (258766)
   dejong@whafh.com
5  WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
6  750 B Street, Suite 2770
   San Diego, CA 92101
7  Telephone: 619/239-4599
   Facsimile:  619/234-4599
8
9  Attorneys for Plaintiffs

10 [Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL DAVIS and ADAM MATSCHULLAT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN HOLDINGS, INC.<br><br>Defendant. | Case No. '15CV2371 JAH BLM<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiffs Jamal Davis and Adam Matschullat ("Plaintiffs"), for their complaint, allege upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel, as follows:

## NATURE OF ACTION

1. This is a data breach class action brought against Defendant Experian Holdings, Inc. ("Experian") pursuant to the Fair Credit Reporting Act, the California Unfair Competition Law, and common law. This action is brought by Plaintiffs, on behalf of themselves and of Classes of persons and entities whose sensitive personal information was stolen from Experian in a recent cyber-attack. The Classes are comprised of, in total, approximately 15 million people who applied for T-Mobile postpaid services or device financing from September 1, 2013 to September 16, 2015 (the "Class Period").

2. Defendant failed to adequately safeguard consumers' sensitive personal information. Defendant's lack of safeguards allowed unauthorized intruders to access Experian's computer network and to steal this sensitive personal information.

3. According to Experian's public announcement of the breach, as well as information provided to Plaintiffs and members of the Classes, the sensitive personal information included names, addresses, Social Security numbers, dates of birth, relevant identification numbers (such as driver's license numbers, military identification numbers and/or passport numbers), and additional internal T-Mobile information (such as payment history) used in T-Mobile's credit assessment.

4. Using this sensitive personal information, hackers and thieves are able to commit numerous crimes in the names of the members of the Classes, including: taking out loans, opening new financial or utility accounts, obtaining government benefits, filing fraudulent tax returns (for the purpose of obtaining a

refund), obtaining state or federal identification, or even giving false information to police during an arrest.

5. As a result, Plaintiffs and members of the Classes have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and members of the Classes must now – and for years to come – closely monitor their financial accounts to guard against this theft. Members of the Classes may be faced with fraudulent debt. Further, members of the Classes may incur out-of-pocket costs in obtaining credit reports, credit freezes, replacing identification or identification numbers, or other protective measures to deter and/or detect identity theft.

## PARTIES

### Plaintiff

6. Plaintiff Jamal Davis is domiciled in San Diego County, California. Since the cyber-attack in question became public earlier this month, Plaintiff Davis has been notified by Experian that his information was likely acquired by thieves. Plaintiff Davis did not become a T-Mobile customer following his credit check.

7. Plaintiff Adam Matschullat is domiciled in San Diego County, California. Since the cyber-attack in question became public earlier this month, Plaintiff Matschullat has been notified three times by Experian that his information was likely acquired by thieves. Plaintiff Matschullat became a T-Mobile customer following his credit check.

### Defendant

8. Defendant Experian Holdings, Inc. is a Delaware corporation with its principal place of business at 475 Anton Blvd., Costa Mesa, CA 92626. It is a subsidiary of Experian plc, a United Kingdom corporation.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because it includes claims brought under the Fair Credit Reporting Act, 15

U.S.C. § 1681, *et seq.*

10. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) ("The Class Action Fairness Act") because sufficient diversity of citizenship exists between parties in this action, the aggregate amount in controversy exceeds $5,000,000, and there are 100 or more members of each of the Classes.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, Defendant regularly conducts business in this District, and Plaintiffs are domiciled in this District.

## CLASS ACTION ALLEGATIONS

12. Plaintiffs bring this action on behalf of themselves and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), seeking damages and equitable relief on behalf of the following classes:

   a. All persons and entities who reside in the United States whose personal information was part of the database accessed by unauthorized individuals as announced by Defendant on October 1, 2015 and who did not subsequently become T-Mobile customers ("the Non-Customer Class"); and

   b. All persons and entities who reside in the United States whose personal information was part of the database accessed by unauthorized individuals as announced by Defendant on October 1, 2015 and who subsequently became T-Mobile customers ("the Customer Class").

13. The Customer Class and the Non-Customer Class are collectively referred to herein as the "Classes."

14. Excluded from the Classes are Defendant; its parent companies, subsidiaries and affiliates; federal governmental entities and instrumentalities of the federal government; and states and their subdivisions, agencies and

instrumentalities.

15. The Classes are so numerous that joinder of all members is impracticable. While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each of the Classes.

16. Common questions of law and fact exist as to all members of the Classes. Such questions of law and fact common to the Classes include, but are not limited to:

>	(a)	Whether Defendant engaged in the wrongful conduct alleged herein;
>
>	(b)	Whether Defendant owed a duty to Plaintiffs and members of the Classes to adequately protect their sensitive personal information;
>
>	(c)	Whether Defendant breached its duty to adequately protect the sensitive personal information of Plaintiffs and members of the Classes;
>
>	(d)	Whether Defendant should have known its data systems and processes were vulnerable to attack;
>
>	(e)	Whether Plaintiffs and members of the Classes suffered legally cognizable damages as a result of Defendant's conduct;
>
>	(f)	Whether Experian's conduct violated the Fair Credit Reporting Act; and
>
>	(g)	Whether Plaintiffs and members of the Classes are entitled to equitable relief.

17. Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendant's wrongful conduct in that their information was exposed to unauthorized users in violation of federal, state and common law.

1     18.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of security breach and class action litigation.

   19.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

   20.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

   21.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

**ADDITIONAL FACTUAL ALLEGATIONS**

**A.    The Data Breach**

   22.    Beginning on October 1, 2015, Experian notified the public that on September 15, 2015 it had "discovered an unauthorized party [had] accessed T-Mobile data housed in an Experian server."[1]

---

[1] *Overview: Unauthorized Acquisition of Personal Information*, EXPERIAN.COM, http://www.experian.com/data-breach/t-mobilefacts.html (last visited Oct. 16, 2015).

23. Experian spokesperson Susan Henson stated after this that on September 22, 2015 Experian was able to confirm the theft of a single data file containing the T-Mobile data.[2]

24. Experian stated that the breach "included access to a server that contained identifying information for some organizations and, primarily, personal information for individuals, including some current customers, and also consumers who applied for T-Mobile USA postpaid service or device financing, which require a credit check, from Sept. 1, 2013 through Sept. 16, 2015."[3]

25. Experian further stated, "Records containing a name, address, Social Security number, date of birth, identification number (typically a driver's license, military ID, or passport number) and additional information used in T-Mobile's own credit assessment were accessed." *Id.*

26. Major news sources have reported that the unauthorized users obtained the sensitive personal information of approximately 15 million people.[4]

27. T-Mobile has disclosed that, "although Social Security and identification numbers were encrypted, the encryption may have been compromised."[5]

28. T-Mobile also stated that "Experian has taken full responsibility for the theft of data from its server." *Id.*

---

[2] *At Experian, Security Attrition Amid Acquisitions*, KREBSONSECURITY.COM, http://krebsonsecurity.com/tag/experian-breach/ (last visited Oct. 16, 2015).

[3] *See* footnote 1, *supra*.

[4] *T-Mobile customers' info breached after Experian hack*, MONEY.CNN.COM, http://money.cnn.com/2015/10/01/technology/tmobile-experian-data-breach/ (last visited Oct. 16, 2015).

[5] *Frequently Asked Questions about the Experian Incident*, T-MOBILE.COM, http://www.t-mobile.com/landing/experian-data-breach-faq.html (last visited Oct. 16, 2015).

1  29. T-Mobile further stated, "Our vendors are contractually obligated to abide by stringent privacy and security practices, and we are extremely disappointed that hackers could access the Experian network. You will have to speak with Experian to get detailed information about their security practices." *Id.*

30. Several state Attorneys General have or are expected to begin investigations into Defendant's role in the breach.[6]

### B. Defendant's Negligence

31. Experian has experienced multiple data breaches in the past. It currently is involved in a class action lawsuit involving identification theft of more than 200 million consumer records.[7]

32. What is more, ***this is not even the first T-Mobile/Experian data breach***. On December 30, 2013, T-Mobile notified a "relatively small" number of customers "unauthorized access to a file stored on servers owned by Experian had exposed Social Security numbers and driver's license numbers."[8]

33. Highly respected security blog Krebs on Security has reported that numerous security experts have left Experian recently because "Experian [is] a company fixated on acquiring companies in the data broker and analytics technology space, even as it has stymied efforts to improve security and accountability at the…firm." *Id.*

34. Additionally, Krebs on Security reports that a "recent former security

---

[6] *Massachusetts attorney general expects multi-state probe into Experian breach*, REUMTERS.COM, http://www.reuters.com/article/2015/10/02/us-experian-cyberattack-investigation-idUSKCN0RW2BC20151002 (last visited Oct. 16, 2015).

[7] *Experian Breach Affects 15 Million Consumers*, KREBSONSECURITY.COM, http://krebsonsecurity.com/2015/10/experian-breach-affects-15-million-consumers/#more-32477 (last visited Oct. 16, 2015).

[8] *See* footnote 2, *supra*.

- 7 -

employee at Experian" said "it was clear that the company's board was not well-informed about the true state of security within the company's various business units." *Id.*

35. T-Mobile's privacy policy states that it "use[s] a variety of physical, electronic, and procedural safeguards to protect Personal Information from unauthorized access, use, or disclosure while it is under our control."[9]

36. The implication of T-Mobile's privacy policy is that Defendant would reasonably safeguard Plaintiffs' and members of the Classes' sensitive personal information.

### C. Defendant's Responses Were Inadequate

37. While Experian offers "two years of free credit monitoring" and "identity resolution services" to Plaintiffs and members of the Classes, this is clearly an inadequate remedy.

38. Such data can be saved by thieves for years before being used to harm individuals whose sensitive personal information was stolen. Nonetheless, Experian is only willing to offer two years of credit monitoring without further explanation.

39. Additionally, Experian's own Frequently Asked Questions ("FAQs") include, "Since Experian was compromised; can it effectively offer credit monitoring?" Experian's own FAQs fail to mention the prior history of T-Mobile/Experian data breaches, and instead of offering even minimal specifics, simply states, "Absolutely. This was an isolated incident of one server and one client's data."[10]

40. Similarly, Experian's FAQs also ask, "What are you doing to prevent

---

[9] *T-Mobile Privacy Policy Highlights*, T-MOBILE.COM, http://www.t-mobile.com/company/website/privacypolicy.aspx (last visited Oct. 16, 2015).

[10] *See* footnote 1, *supra*.

this from happening again?" Experian responds (to itself): "Experian is committed to building customers for life and is working tirelessly to improve our security systems and processes. We have taken immediate steps to harden our environment. We continue to work to validate that our security measures and practices stand up to the high standards to which we hold ourselves." *Id.*

41. Contrary to such platitudes, though, security experts (such as Krebs on Security, cited *supra*) are unimpressed. Krebs on Security specifically responded to Experian's offer of two years of free credit monitoring by saying, "Experian's offer to sign victims up for its credit monitoring service to address a breach of its own making is pretty rich. Moreover, credit monitoring services aren't really built to prevent ID theft. The most you can hope for from a credit monitoring service is that they give you a heads up when ID theft does happen, and then help you through the often labyrinthine process of getting the credit bureaus and/or creditors to remove the fraudulent activity and to fix your credit score."[11]

## CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF[12]

**(For negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.)**

42. Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

43. Experian was negligent in failing to maintain reasonable procedures to protect Plaintiffs' and members of the Classes' sensitive personal information and consumer reports.

---

[11] *See* footnote 6, *supra*.

[12] Unless otherwise specified, all causes of action are alleged by Plaintiffs on behalf both Classes.

- 9 -

44. Experian's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and members of the Classes' personal information and consumer reports for no permissible purposes under the Fair Credit Reporting Act.

45. Experian's negligent conduct was the cause of the unauthorized intruders' access to Plaintiffs' and the members of the Classes' sensitive personal information.

46. Plaintiffs and members of the Classes have been damaged by Experian's negligent violation of the Fair Credit Reporting Act.

47. Plaintiffs and members of the Classes are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1).

48. Plaintiffs and members of the Classes are also entitled to punitive damages, costs of suit, and reasonable attorney's fees. 15 U.S.C. § 1681o(a)(2).

## SECOND CLAIM FOR RELIEF

**(By Plaintiff Adam Matschullat on Behalf of the Customer Class for unlawful, unfair, and fraudulent business practices under California Business and Professions Code § 17200, *et seq*.)**

49. Plaintiff Adam Matschullat incorporates all prior paragraphs as though fully set forth herein.

50. Defendant's acts and practices constitute unlawful, unfair, and/or fraudulent business practices, in violation of the Unfair Competition Law, California Business and Professions Code section 17200, *et seq*.

51. Defendant's conduct constitutes fraudulent practices in that those practices are likely to deceive a reasonable consumer.

52. Defendant engaged in unfair business practices by, among other things:

      a.    Engaging in conduct where the utility of the conduct is outweighed by the gravity of the consequences to Plaintiffs and Class members; and

      b.    Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and Class members.

53.    As a direct and proximate result of Defendant's unlawful, unfair or fraudulent business practices, Plaintiff Adam Matschullat and members of the Customer Class have suffered injury in fact and lost money or property, in that they purchased cellular telephone plans and services they otherwise would not have purchased and paid more for these products and services than they otherwise would have paid.

54.    Plaintiff Adam Matschullat and members of the Customer Class are entitled to equitable relief – including restitutionary disgorgement of all profits accruing to Defendant because of its unlawful, unfair, fraudulent, and deceptive practices – and to attorney's fees and costs, and declaratory relief.

### THIRD CLAIM FOR RELIEF
### (Negligence)

55.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

56.    Defendant came into possession of Plaintiffs' and Class members' sensitive customer information and had a duty to exercise reasonable care in securing that information from unauthorized access or disclosure.

57.    Defendant's duty arose from its relationship to Plaintiffs and Class members and from industry custom.

58.    Defendant, through its actions and/or failures to act, unlawfully breached duties to Plaintiffs and Class members by failing to implement standard

1 industry protocols and to exercise reasonable care to secure and keep private the
2 sensitive personal information entrusted to it.

3     59. Plaintiffs' and Class members' sensitive personal information was
4 stolen and accessed as the proximate result of Defendant's failure to exercise
5 reasonable care in safeguarding sensitive personal information by adopting
6 appropriate security measures, including encryption. As a result, the Plaintiffs and
7 Class members have been injured and have suffered damages.

## FOURTH CLAIM FOR RELIEF

### (Bailment)

10     60. Plaintiffs incorporate all prior paragraphs as though fully set forth
11 herein.

12     61. Plaintiffs and Class members entrusted their sensitive personal
13 information to T-Mobile for the purpose of receiving cellular telephone services
14 from T-Mobile. T-Mobile, in turn, entrusted that sensitive personal information to
15 Experian for the purpose of running authorized credit checks.

16     62. Defendant owed Plaintiffs and Class members a duty to properly
17 safeguard their sensitive customer information and to use reasonable security
18 practices to protect the vast amount of lucrative sensitive customer information
19 entrusted to it. Defendant breached its duty by failing to maintain Plaintiffs' and
20 Class members' sensitive personal information in a reasonably secure manner.

21     63. While in Defendant's possession and control, the sensitive personal
22 information was accessed and stolen.

23     64. As a result of Defendant's breaches of duty, Plaintiffs and Class
24 members have suffered harm. Plaintiffs seek actual damages for the Class.

## PRAYER FOR RELIEF

26 **WHEREFORE**, Plaintiffs pray for the following relief:
27     a. An order certifying this matter as a class action;
28     b. An order naming counsel herein as Class counsel;

1      c.      Consequential damages or statutory damages;
2      d.      Equitable relief;
3      e.      An order declaring that Defendant's acts and practices constitute a breach of contract;
4      f.      An order declaring that Defendant's acts and practices with respect to the safekeeping of sensitive customer information are negligent;
5      g.      An order enjoining Defendant from continuing to engage in unlawful business practices as alleged herein;
6      h.      Economic damages;
7      i.      Non-economic damages;
8      j.      Costs of suit incurred herein;
9      k.      Any and all prejudgment interest permitted by law;
10      l.      Reasonable attorney fees and costs of suit, including expert witness fees;
11      m.      Restitution; and
12      n.      Such further relief the Court deems proper.

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and the Classes of all others similarly situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 19, 2015          **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:     */s/ Rachele R. Rickert*
         RACHELE R. RICKERT

BETSY C. MANIFOLD
RACHELE R. RICKERT
MARISA C. LIVESAY
BRITTANY N. DEJONG
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599

| | |
|---|---|
| 1 | Facsimile: 619/234-4599 |
| 2 | manifold@whafh.com |
| | rickert@whafh.com |
| 3 | livesay@whafh.com |
| | dejong@whafh.com |

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
THOMAS BURT
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653
burt@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
THEODORE B. BELL
CARL MALMSTROM
One South Dearborn St., Suite 2122
Chicago, IL 60603
Telephone: 312/984-0000
Facsimile: 312/212-4401
tbell@whafh.com
malmstrom@whafh.com

Attorneys for Plaintiffs

EXPERIAN DATA BREACH:22296.complaint

- 14 -